UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LAMAR JOHNSON,

                    Petitioner,                    Civil Case No. 14-11572
                                                Honorable Linda V. Parker

v.

LORI GIDLEY,

                    Respondent.

_____/

**OPINION AND ORDER (1) DENYING PETITION FOR WRIT OF HABEAS CORPUS [ECF NO. 1], (2) DENYING A CERTIFICATE OF APPEALABILITY, (3) GRANTING PERMISSION TO APPEAL IN FORMA PAUPERIS, AND (4) DENYING PETITIONER'S PENDING MOTIONS [ECF NOS. 12-15]**

This is a habeas case brought by a Michigan prisoner under 28 U.S.C. § 2254. Petitioner Lamar Johnson was convicted after a jury trial in the Kalamazoo Circuit Court of second-degree murder, Mich. Compl. Laws § 750.317, assault with intent to commit murder, Mich. Comp. Laws § 750.83, and two counts of possession of a firearm during the commission of a felony. Mich. Comp. Laws § 750.227b. Petitioner was sentenced to 30-to-65 years for the murder conviction, 18-to-30 years for the assault conviction, and a consecutive term of two years for the firearm convictions.

The petition raises three claims: (1) Petitioner's trial counsel was ineffective for failing to object to gang-activity evidence; (2) Petitioner's trial counsel was

ineffective for failing to investigate and argue that Petitioner acted in self-defense; and (3) Petitioner was deprived of his right to a public trial when the voir dire of one prospective juror was conducted in chambers. The Court finds that review of all of Petitioner's claims is barred by his state court procedural default. Therefore, the petition will be denied. The Court will also deny Petitioner a certificate of appealability, but it will grant permission to proceed on appeal in forma pauperis.

## I. Background

This Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009):

> Defendant's convictions stem from the December 15, 2007 shooting death of Anthony Potts, the victim, inside a club on Parsons Street in Kalamazoo. Many witnesses present in the club that evening similarly described at trial that a verbal altercation had commenced between members of different, rival neighborhoods (C-Block and D-Block), which quickly escalated into weapon flashing and gunfire. Antonio Taylor and Tykwan Buchanan were the first club guests to draw guns in a fashion threatening to one another. Most club patrons who testified at trial agreed that Taylor had fired the first shots that evening, either into the air or at Buchanan, prompting Buchanan, the victim, and multiple female club patrons to flee toward the lone bathroom at the rear of the small club. Most witnesses also agreed that Taylor had ceased shooting after firing several shots, although a new round of gunfire began within a brief period. According to multiple witnesses, defendant took possession of Taylor's large handgun and fired many gunshots directly into the club's bathroom; some of the club patrons present did not actually see defendant fire the second round of gunshots. While in the bathroom, the victim sustained a

2

single gunshot wound that transected an artery, rapidly causing his death.

*    *    *

Kennethia Hill, the first eyewitness to the December 15, 2007 shooting to testify at trial, recounted seeing Taylor and Buchanan draw weapons, and Taylor fire his handgun toward the club's bathroom; when Taylor stopped firing, defendant took the handgun from Taylor, approached at least a couple additional steps toward the restroom at the rear of the club, and fired repeatedly toward the bathroom. Christopher Hoggan, who had accompanied the victim to the club shortly before the shooting, similarly identified Taylor at trial as the first person to shoot toward the bathroom, and that when Taylor stopped shooting, defendant approached Taylor, chastised Taylor with words to the effect of, "[M]an, what you doing; let me show you how to do it," and then fired multiple gunshots directly at the bathroom. Club patron Shatoya Stewart also recalled that Taylor had commenced the gunfire inside the club, and that within "one second" or "one minute" of Taylor ceasing fire, defendant "came in" and "started shooting toward the bathroom." Taylor denied ever having fired a shot on December 15, 2007, but described that defendant had taken his Glock handgun from Taylor's possession and fired multiple times toward the bathroom in "self defense," after Buchanan had shot at them. Four other witnesses to the shooting agreed that the gunfire that morning had occurred in two discrete segments; several of these witnesses identified Taylor as the first to fire gunshots. Four trial witnesses testified that the victim had suffered his lone gunshot wound inside the bathroom in the course of the second phase of the gunfire inside the club, although one witness believed the victim had been fatally wounded during the first round of shots toward the bathroom.

*People v. Johnson*, No. 288763, 2010 WL 5019870 at *1- 2 (Mich. Ct. App. Dec. 9, 2010).

3

After his conviction and sentence, Petitioner was appointed appellate counsel who filed a claim of appeal in the Michigan Court of Appeals. Appellate counsel filed a brief on appeal raising three claims: (1) erroneous jury instructions regarding aiding and abetting; (2) prosecutorial misconduct; and (3) ineffective assistance of counsel for failing to request a voluntary manslaughter jury instruction, failing to object to the aiding and abetting instruction, and failing to object to prosecutorial misconduct. None of these claims are being raised in this action.

Petitioner also filed a supplemental pro se brief raising two additional claims: (1) ineffective assistance of counsel for failing to move to suppress a suggestive identification; and (2) the evidence presented at trial was insufficient to sustain Petitioner's convictions. These claims are not being raised in this action either.

The Michigan Court of Appeals addressed and rejected all five claims and affirmed Petitioner's convictions in an unpublished opinion. *Ibid.* Petitioner then filed an application for leave to appeal in the Michigan Supreme Court raising the same claims he raised in the Michigan Court of Appeals. The Michigan Supreme Court denied the application because it was not persuaded that the questions

4

presented should be reviewed by the Court. *People v. Johnson*, 797 N.W.2d 632 (Mich. 2011) (Table).

Petitioner then filed a motion for relief from judgment in the trial court. The motion raised ten claims, including the three claims Petitioner is raising in this action. On June 19, 2012, the trial court issued an opinion and order denying the motion for relief from judgment. The court found that Petitioner's claims lacked merit and review of his claims was barred under Michigan Court Rule 6.508(D)(3).

Petitioner filed an application for leave to appeal this decision in the Michigan Court of Appeals, but it was denied "for failure to establish entitlement to relief under Michigan Court Rule 6.508(D)." *People v. Johnson*, No. 314052, Mich. Ct. App. Order (Sept. 24, 2013). Petitioner appealed this decision to the Michigan Supreme Court, but that court also denied relief by citation to Rule 6.508(D). *People v. Johnson*, 843 N.W.2d 541 (Mich. 2014) (Table).

## II. Analysis

All three of Petitioner's habeas claims were presented to the state courts in his state post-conviction review proceeding. Respondent asserts that review of these claims is procedurally defaulted because the trial court relied in the alternative on Petitioner's failure to demonstrate under Michigan Court Rule

5

6.508(D)(3) good cause and actual prejudice for his failure to raise his post-conviction claims during his direct appeal. The Court agrees.

When a state court clearly and expressly relies on a valid state procedural bar, federal habeas review is barred unless the habeas petitioner can demonstrate "cause" for the default and actual prejudice as a result of the alleged constitutional violation, or if he can demonstrate that failure to consider his defaulted claims will result in a "fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991).

Rule 6.508(D)(3) provides that a Michigan trial court may not grant relief to a criminal defendant if the motion for relief from judgment alleges grounds for relief that could have been raised on direct appeal, absent a showing of good cause for the failure to raise such grounds previously and actual prejudice resulting therefrom. The Michigan Court of Appeals and the Michigan Supreme Court rejected Petitioner's appeal from the denial of his motion for relief from judgment because "the defendant has failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)." These orders, however, did not refer to subsection (D)(3), nor did they mention Petitioner's failure to raise these claims on his direct appeal as their rationale for rejecting his post-conviction claims. Because the form orders in this case citing Rule 6.508(D) are ambiguous as to whether they refer to

6

procedural default or a denial of post-conviction relief on the merits, the orders are unexplained. See *Guilmette v. Howes*, 624 F. 3d 286, 291 (6th Cir. 2010). This Court must "therefore look to the last reasoned state court opinion to determine the basis for the state court's rejection" of Petitioner's claims. *Id.*

The trial court, in rejecting Petitioner's post-conviction claims, cited Rule 6.508(D)(3). The court specifically found Petitioner "has not demonstrated good cause for failure to raise the issues he presents in a previous appeal or motion. The court will not waive the good cause requirement of subrule (D)(3)(a) as there is not a significant possibility that Johnson is innocent of the crimes of which he was convicted." (*See* ECF No. 11-19, Pg. ID 2004.) Contrary to the argument Petitioner makes in his "motion for summary judgment" (ECF No. 13), the trial court did not exclude his public trial claim from this analysis. The Court acknowledged that this claim was one of the claims that was being raised in the motion for relief from judgment. (ECF No. 11-19, at Pg. ID 2000.) It then specifically referred to "the issues he presents" when it found that Petitioner had failed to comply with Rule 6.508(D)(3). (*Id.*, at Pg. ID 2004.) Such reliance on Rule 6.508(D)(3) was "an adequate and independent state ground" on which the state can rely to foreclose federal habeas review. *Amos v. Renico*, 683 F.3d 720, 733 (6th Cir. 2012).

7

Furthermore, contrary to Petitioner's argument made in his "motion to strike all of Respondent's forfeited state based procedural default defense" (ECF No. 14), Respondent did not waive any procedural default defense by failing to assert it in state court. Petitioner is correct when he asserts that, generally, procedural default is an affirmative defense that is waived if Respondent does not raise it. See *Trest v. Cain*, 522 U.S. 87, 89 (1997) (holding that state's failure to raise procedural default normally constitutes waiver of the default); *Gray v. Netherland*, 518 U.S. 152, 166 (1996) (holding that procedural default is normally an affirmative defense that will be waived if not raised). Here, however, Respondent raised its procedural default defense in its first responsive pleading in this action. The defense concerns the limitations on a federal court's ability to review claims that were forfeited in the state courts because of a defendant's failure to comply with a state procedural rule. Obviously, Respondent's first opportunity to argue that Petitioner's claims are barred from federal habeas review is during the federal proceeding itself. The basis for the defense does not exist until after the state court disposes of Petitioner's claims on procedural grounds.

Next, it is true that the trial court conducted a merits analysis of one claim not presented in this action in addition to relying on Rule 6.508(D)(3). But this does not alter the fact that Petitioner's claims are deemed to be procedurally barred

8

from review. Where a state court finds claims to be barred from review and also finds that the claims are without merit in the alternative, the claims are still deemed to be procedurally barred from federal habeas review. See *Harris v. Reed*, 489 U.S. 255, 264 n.10 (1989) ("[A] state court need not fear reaching the merits of a federal claim in an alternative holding."); *McBee v. Abramajtys*, 929 F.2d 264, 267 (6th Cir. 1991). In any event, the trial court did not conduct a merits review of any of the three claims Petitioner asserts in this action. The only basis for decision of his habeas claims was the imposition of the Rule 6.508(D)(3) default.

In Petitioner's most recent filing, entitled "amended petition for writ of habeas corpus and reply to respondent's answer," (ECF No. 15), Petitioner alleges ineffective assistance of appellate counsel as cause to excuse his failure to raise his habeas claims on direct appeal. This assertion ignores the fact that Petitioner filed a pro se supplemental brief during his direct appeal that raised an ineffective assistance of counsel claim but failed to raise the claims he now raises. Because Petitioner has offered no reason for his own failure to include any of his post-conviction claims in his pro se supplemental brief on direct appeal, he has failed to establish cause to excuse the default. *See McCray v. Curtin*, 2013 U.S. Dist. LEXIS 121561, 26-27 ( E.D. Mich. Aug. 27, 2013); *Rockwell v. Palmer*, 559 F. Supp. 2d 817, 834 (W.D. Mich. 2008) (habeas petitioner did not show cause for his

failure to raise on direct appeal his claim of ineffective assistance of trial counsel, where petitioner had filed two briefs on his own behalf raising other claims that had not been asserted by his appellate counsel, but he offered no explanation for his failure to raise the ineffective assistance claim at the same time).

In any event, Petitioner has failed to show that his appellate counsel was ineffective for failing to raise his post-conviction claims in his direct appeal. The Sixth Amendment guarantees a defendant the right to the effective assistance of counsel on the first appeal by right. *Evitts v. Lucey*, 469 U.S. 387, 396-397 (1985). However, it is well established that a criminal defendant does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal. *See Jones v. Barnes*, 463 U.S. 745, 751 (1983). The Supreme Court has explained:

> For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every "colorable" claim suggested by a client would disserve the . . . goal of vigorous and effective advocacy. . . . Nothing in the Constitution or our interpretation of that document requires such a standard.

*Id*. at 754.

Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990). In fact, "the hallmark of effective appellate

10

advocacy" is the "process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail." *Smith v. Murray*, 477 U.S. at 536 (quoting *Barnes*, 463 U.S. at 751-752). "Generally, only when ignored issues are clearly stronger than those presented will the presumption of effective assistance of appellate counsel be overcome." *Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir. 2002).

Appellate counsel may deliver deficient performance and prejudice a defendant by omitting a "dead-bang winner," which is defined as an issue which was obvious from the trial record and would have resulted in a reversal on appeal. *Meade v. Lavigne*, 265 F. Supp. 2d 849, 870 (E.D. Mich. 2003).

Petitioner fails to show that appellate counsel's performance fell outside the wide range of professionally competent assistance by omitting the claims that he raised in his post-conviction motion. Petitioner's appellate counsel raised three claims on appeal, and though they proved to be without merit, Petitioner has failed to show that any of his habeas claims are obvious from the trial record and would have resulted in a reversal on appeal.

Petitioner first claims that his trial counsel was ineffective for failing to object to gang-activity evidence. In order to prevail on a claim of ineffective assistance of counsel, Petitioner "must show both that his counsel's performance

11

was deficient and that the deficient performance prejudiced the defense." *Hodges v. Colson*, 711 F.3d 589, 613 (6th Cir. 2013) (citing *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984)). To show deficiency, Petitioner must establish that "counsel made errors so serious that [he] was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." *Strickland*, 466 U.S. at 687. To show prejudice, Petitioner must establish that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

Here, the factual background of Petitioner's case involved a dispute between two gangs. The fact that rival gangs were at the same establishment provided the motive for the initial altercation that eventually escalated to the fatal shooting. Under Michigan law, evidence regarding gang activity is admissible when  it is part of the circumstances of the crime. See *People v. Sholl*, 453 Mich. 730, 742 (1996); *Blackmon v. Booker*, 696 F.3d 536, 551 (6th Cir. 2012) (reversing a grant of habeas relief on account of the admission of gang-related evidence). Petitioner's counsel was not ineffective for failing to make a meritless objection to admissible evidence. See *Bradley v. Birkett*, 192 Fed. Appx. 468, 475 (6th Cir. 2006). It follows that appellate counsel was not ineffective for failing to pursue this baseless issue on direct appeal.

Petitioner next asserts that his trial counsel was ineffective for failing to investigate and argue that Petitioner acted in self-defense. This claim amounts to a classic case of second-guessing trial counsel's trial strategy. A review of the trial record shows that trial counsel chose to base his defense on the theory that the prosecution failed to demonstrate that Petitioner fired the shot that killed the victim. Evidence was presented that at least three other people shot guns at the time of the incident, and forensic examiners could not identify which gun fired the bullet that killed the victim.

Given the fact that multiple witnesses testified that the victim was shot after he had fled into the bathroom, it is not difficult to see why trial counsel chose to base his defense on identification of the shooter rather than self defense. This is especially so given the strong evidence that the victim was hiding in the bathroom when he was killed. See *Ivory v. Jackson*, 509 F.3d 284, 296 (6th Cir. 2007) (habeas petitioner unable to demonstrate prejudice where he would not have prevailed on a meritless self-defense rationale). Again, this issue is not clearly stronger than the issues appellate counsel chose to present on direct appeal, and therefore appellate counsel did not perform deficiently by omitting this claim.

Finally, Petitioner asserts that he was deprived of his right to a public trial when the voir dire of one juror was conducted in chambers.

13

A review of the record reveals that on the second day of jury selection, a juror mentioned that she was a nurse and had patients involved with gangs, but she felt that she could not openly discuss her ability to serve as juror on account of her experience with gang members because of confidentiality concerns under HIPAA (the Health Insurance Portability and Accountability Act). As a result, the trial court took the prospective juror, the attorneys, and Petitioner into chambers in an effort to maintain confidentiality. In chambers, the juror explained that she had once been threatened on the phone after she had taken care of a gang member who had been shot. The juror was excused for cause. Petitioner's counsel did not object to conducting the questioning of the juror in chambers.

This procedure did not violate Petitioner's right to a public trial under the Sixth Amendment. The Sixth Amendment provides that a criminal defendant "shall enjoy the right to a … public trial." U.S. CONST. AMEND. VI. The public trial guarantee "embodies a view … that judges, lawyers, witnesses, and jurors will perform their respective functions more responsibly in an open court than in secret proceedings." *Waller v. Georgia*, 467 U.S. 39, 46 n. 4 (1984) (quoting *Estes v. Texas*, 381 U.S. 532, 588 (1965) (Harlan, J., concurring)). The right to a public trial extends to the jury selection phase of trial and pre-trial proceedings. *Presley v. Georgia*, 558 U.S. 209 (2010).

14

Despite the presumption of openness, the right to a public trial "is not absolute." *Globe Newspaper Co. v. Superior Court for Norfolk County*, 457 U.S. 596, 606 (1982). Indeed, "the right to an open trial may give way in certain cases to other rights or interests, such as the defendant's right to a fair trial or the government's interest in inhibiting disclosure of sensitive information." *Waller*, 467 U.S. at 45. "Such circumstances will be rare, however, and the balance of interests must be struck with special care." *Id*.

As Respondent correctly notes, the right to a public jury selection proceeding is not self-executing. A defendant is only entitled to have the trial court weigh the various interests discussed in *Waller* and *Presley* if the defendant objects. *Waller*, 467 U.S. at 47. Here, there was no objection by defense counsel to the questioning of the juror in chambers, and therefore there was no violation of his Sixth Amendment right to a public trial. See *Pouncy v. Palmer*, 2015 U.S. Dist. LEXIS 93629 (E.D. Mich. July 20, 2015). As with Petitioner's two other claims, this claim was not clearly stronger than the claims raised by appellate counsel during Petitioner's direct appeal. Accordingly, Petitioner's appellate counsel was not ineffective for failing to raise it.

Indeed, none of Petitioner's habeas claims were "dead-bang winners." Based on the record before the Court, they do not appear to have any more merit than the

15

claims raised on direct appeal. Petitioner's appellate counsel was therefore not ineffective, and as a result, Petitioner has failed to demonstrate cause to excuse his procedural default.

One final exception to the procedural default rule, known as the "fundamental miscarriage of justice" exception, allows review of defaulted claims if the petitioner can show that the constitutional errors he alleges have probably resulted in the conviction of one who is actually innocent. *Bousley v. United States*, 523 U.S. 614, 623 (1998). In order to be entitled to the actual-innocence exception, however, a petitioner must present "new and reliable evidence that was not presented at trial" that "show[s] that it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt." *Schlup v. Delo*, 513 U.S. 298, 299 (1995).

It is not sufficient to show merely that the evidence raises a reasonable doubt that did not otherwise exist. *See id.* at 329 ("The meaning of actual innocence . . . does not merely require a showing that a reasonable doubt exists in light of the new evidence, but rather that no reasonable juror would have found the defendant guilty."). "Actual innocence," according to the Supreme Court, "means factual innocence, not mere legal insufficiency." *Bousley*, 523 U.S. at 623.

Nothing Petitioner has provided the Court comes close to demonstrating his actual innocence under this demanding standard. In Petitioner's reply brief, (ECF No. 15), he attaches several affidavits that he asserts prove his innocence. He attaches his own affidavit swearing that he shot the victim in self-defense, and that in any event when he did so the victim was already dead because Antonio Taylor had already shot him. (*Id.* at Pg. ID 2191.) He also attaches the affidavit of Antonio Taylor, who does not admit to shooting the victim but claims that he saw Petitioner fire his weapon in self-defense. (*Id.* at Pg. ID 2194.) The affidavits of Danny McDonald, Demario Jackson, and Johnny Hopkins (who were among Petitioner's group at the scene) claim that Taylor was the one who shot and killed the victim. (*Id.* at Pg. ID 2196, 2199-2201, 2203.) Lastly, Petitioner attaches an affidavit from his mother that these three men told her that Taylor shot the victim. (*Id.* at Pg. ID 22206.)

These statements are not the type of compelling evidence that establish actual innocence under the demanding standard set forth above. New statements from witnesses, years after the crime, are inherently suspect, and such statements are to be viewed with "a degree of skepticism." *See Schlup*, 513 U.S. at 331; *Herrera v. Collins*, 506 U.S. 390, 423 (1993) (O'Connor, J., concurring); *see also*, *McCray v. Vasbinder*, 499 F.3d 568, 574 (6th Cir. 2007) (citing *United States v.*

17

*Willis*, 257 F.3d 636, 645 (6th Cir. 2001); *Byrd v. Collins*, 209 F.3d 486, 508 n. 16 (6th Cir. 2000). The most that can be said of Petitioner's new evidence is that the jury would have heard more than the one witness that thought the victim was shot before he entered the bathroom. But again, it is not enough to show that the new evidence creates a reasonable doubt – it must show that it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt. A reasonable juror hearing the trial testimony and Petitioner's new witnesses could still have chosen to convict him.

The evidence of Petitioner's guilt was quite strong and supported by the accounts of multiple eyewitnesses who testified at trial. Petitioner has not demonstrated that it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt had the affiants testified at trial in accordance with their affidavits. Accordingly, his claims are procedurally barred from review, and the Court will deny the petition for writ of habeas corpus.

Petitioner seeks an evidentiary hearing to demonstrate that he is actually innocent. Such a showing would avoid the imposition of a state procedural bar to his claims. *See Schlup v. Delo*, 513 U.S. 298, 327 (1995); accord *House v. Bell*, 547 U.S. 518 (2006). "[T]o be credible, [a claim of actual innocence] requires petitioner to support his allegations of constitutional error with new reliable

18

evidence that was not presented at trial." *Schlup*, 513 U.S. at 324. In deciding whether an evidentiary hearing is warranted, the district court must assess the probative force of the newly presented evidence in connection with the evidence of guilt adduced at trial. The court's "'confidence in the outcome of [the petitioner's] state trial' must be 'undermined' before he is entitled to a hearing 'for the purpose of developing the evidence needed to pass his procedurally defaulted habeas claims through the actual innocence gateway.'" *Sibley v. Culliver*, 377 F.3d 1196, 1206–07 (11th Cir. 2004) (quoting *Davis v. Gammon*, 27 Fed. Appx. 715, 717 (8th Cir. 2001)) and citing *Patterson v. Bartlett*, 56 Fed. Appx. 762, 764 (9th Cir. 2002) (holding that a district court did not abuse its discretion in failing to grant an evidentiary hearing to a habeas petitioner claiming actual innocence because "[i]t is unlikely that an evidentiary hearing on the allegations contained in the affidavits would produce the sort of reliable evidence of actual innocence that *Schlup* demands")). Having reached the immediately preceding determination, the Court finds that Petitioner is not entitled to an evidentiary hearing. As explained previously, the evidence that Plaintiff seeks to introduce lacks the probative force needed to undermine this Court's confidence in the state trial. Accordingly, the Court shall deny Petitioner's motion for evidentiary hearing.

19

### III. Certificate of Appealability

In order to appeal the Court's decision, Petitioner must obtain a certificate of appealability. To obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). A federal district court may grant or deny a certificate of appealability when the court issues a ruling on the habeas petition. *Castro v. United States*, 310 F.3d 900, 901 (6th Cir. 2002).

Here, jurists of reason would not debate the Court's conclusion that Petitioner has not met the standard for a certificate of appealability because his claims are clearly barred by his state court procedural default and devoid of merit. The Court will therefore deny a certificate of appealability.

The Court will, however, grant permission to appeal in forma pauperis because any appeal of this decision could be taken in good faith. 28 U.S.C. § 1915(a)(3).

## IV. Conclusion

Accordingly, the Court (1) **DENIES WITH PREJUDICE** the petition for a writ of habeas corpus; (2) **DENIES** a certificate of appealability; (3) **GRANTS** permission to appeal in forma pauperis, and (4) **DENIES** Petitioner's pending motions. (ECF Nos. 12-15.)

**SO ORDERED.**

s/ Linda V. Parker
LINDA V. PARKER
U.S. DISTRICT JUDGE

Dated: February 11, 2016

I hereby certify that a copy of the foregoing document was mailed to counsel of record and/or pro se parties on this date, February 11, 2016, by electronic and/or U.S. First Class mail.

s/ Richard Loury
Case Manager

21